Attorney Grievance Commission of Maryland v. Thomas McCarthy, Jr., Misc. Docket AG No. 72, September Term, 2019

**ATTORNEY DISCIPLINE – SANCTIONS – DISBARMENT –** Court of Appeals disbarred attorney who, among other things, failed to file opening brief, appendix, or motion to extend time on behalf of company that attorney represented, resulting in dismissal of appeal, failed to inform owner of company of missed filing deadlines and dismissal of appeal, knowingly and intentionally misrepresented to owner of company that he was working on reinstating appeal, and failed to provide timely and complete responses to Bar Counsel's requests for information and documentation.  Such conduct violated Maryland Attorneys' Rules of Professional Conduct ("MARPC") 1.3 (Diligence), 1.4(a)(2) (Keeping Client Reasonably Informed), 1.4(a)(4) (Consulting with Client About Limitation on Attorney's Conduct), 1.4(b) (Explaining Matter to Client), 1.16(a)(1) (Terminating Representation), 5.5(a) (Unauthorized Practice of Law), 5.5(b)(2) (Misrepresenting that Attorney is Admitted), 8.1(b) (Failing to Respond to Lawful Demand for Information), 8.4(b) (Criminal Act), 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation), 8.4(d) (Conduct that is Prejudicial to Administration of Justice), and 8.4(a) (Violating MARPC).

IN THE COURT OF APPEALS

OF MARYLAND

Misc. Docket AG No. 72

September Term, 2019

_____

ATTORNEY GRIEVANCE COMMISSION
OF MARYLAND

v.

THOMAS MCCARTHY, JR.

_____

Barbera, C.J.
McDonald
Watts
Hotten
Getty
Booth
Biran,

JJ.

_____

Opinion by Watts, J.

_____

Filed: May 27, 2021

Pursuant to Maryland Uniform Electronic Legal
Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

This attorney discipline proceeding involves an attorney who, among other instances of misconduct, failed to file an opening brief, an appendix, or a motion to extend time on behalf of a company in an appeal, resulting in the appeal being dismissed, and made a knowing and intentional misrepresentation to the owner of the company that he was working to have the appeal reinstated.

Thomas McCarthy, Jr., Respondent, a member of the Bar of Maryland, was retained by Jonathan B. Radding to represent his company, View Point Medical Systems, LLC ("View Point"), which was the appellant in an appeal before the United States Court of Appeals for the Fourth Circuit. The underlying case began as a breach of contract action in the Circuit Court for Baltimore City in which View Point was the plaintiff and the defendant in the lawsuit had the case removed to the United States District Court for the District of Maryland. On appeal, McCarthy failed to file an opening brief, an appendix, or a motion to extend time on View Point's behalf, resulting in dismissal of the appeal. McCarthy knowingly and intentionally misrepresented to Radding that he was working on reinstating the appeal and briefing schedule. In actuality, McCarthy never drafted or filed a motion to reinstate the appeal or took any other steps to protect View Point's claim. Radding caused a complaint against McCarthy to be filed with Bar Counsel.[1] Bar Counsel made numerous requests for information and documentation, to which McCarthy knowingly and intentionally failed to provide timely and complete responses.

---

[1]Radding, a person who had suffered a brain injury, requested from Bar Counsel assistance in completing the complaint form. An investigator for Bar Counsel telephoned Radding and transcribed the complaint.

On February 24, 2020, on behalf of the Attorney Grievance Commission, Petitioner, Bar Counsel filed in this Court a "Petition for Disciplinary or Remedial Action" charging McCarthy with violating Maryland Lawyers' Rules of Professional Conduct ("MLRPC") and Maryland Attorneys' Rules of Professional Conduct ("MARPC")[2] 1.3 (Diligence), 1.4(a)(1) (Informing Client Regarding Informed Consent), 1.4(a)(2) (Keeping Client Reasonably Informed), 1.4(a)(4) (Consulting with Client About Limitation on Attorney's Conduct), 1.4(b) (Explaining Matter to Client), 1.16(a)(1) (Terminating Representation), 5.5(a) (Unauthorized Practice of Law), 5.5(b)(2) (Misrepresenting that Attorney is Admitted), 8.1(b) (Failing to Respond to Lawful Demand for Information), 8.4(b) (Criminal Act), 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation), 8.4(d) (Conduct that is Prejudicial to Administration of Justice), and 8.4(a) (Violating MLRPC or MARPC). On March 4, 2019, this Court designated the Honorable Glenn L. Klavans ("the hearing judge") of the Circuit Court for Anne Arundel County to hear the attorney discipline proceeding.

On August 7, 2020, in this disciplinary proceeding, Bar Counsel filed a Notice of Service of Discovery Material, stating that, on August 1, 2020, through a process server, Bar Counsel had served on McCarthy interrogatories, a request for production of documents, and a request for admission of facts and genuineness of documents. Under the

---

[2]Effective July 1, 2016, the MLRPC were renamed the MARPC and relocated to Title 19 of the Maryland Rules, without substantive change. The misconduct at issue occurred both before and after this change. In this case, after identifying the MLRPC and MARPC that Bar Counsel charged McCarthy with violating, we will refer only to the MARPC.

Maryland Rules, responses to the discovery requests were due on August 31, 2020, thirty days after the service of the discovery requests.[3] In the request for admissions, Bar Counsel asked McCarthy to admit the genuineness of twenty-eight attached exhibits[4] and to admit the following facts:

1. You were admitted to the Bar of the State of Maryland on June 14, 1989.

2. At all times relevant herein, you maintained an office for the practice of law in Anne Arundel County, Maryland.

### Representation of Jonathan B. Radding and View Point Medical Systems, LLC

3. In January 2014, Jonathan B. Radding suffered a brain injury.

4. Mr. Radding's injury causes him to experience overstimulation of brain function, affects his short-term memory and affects his ability to converse for lengthy periods of time.

5. Beginning in or about 2002, Mr. Radding owned View Point Medical Systems, LLC ("View Point").  View Point was a healthcare technology company.

6. In 2009 View Point began generating sales leads for Athena Health, Inc. ("Athena").

---

[3]Responses to interrogatories, requests for production, and requests for admission are due "within 30 days after service of the" interrogatories or requests "or within 15 days after the date on which that party's initial pleading or motion is required, whichever is later."  Md. R. 2-421(b) (governing responses to interrogatories), 2-422(c) (governing responses to requests for production), 2-424(b) (governing responses to requests for admissions).  Here, thirty days after the service of the discovery requests was August 31, 2020, which was later than fifteen days after the answer to the Petition for Disciplinary or Remedial Action was due on May 5, 2020.

[4]The twenty-eight attached exhibits included documents such as the docket entries from the United States District Court for the District of Maryland and the United States Court of Appeals for the Fourth Circuit for View Point's case, text message exchanges between McCarthy and Radding, and letters from Bar Counsel to McCarthy concerning Radding's complaint and requesting that McCarthy provide information.

- 3 -

7. On February 25, 2013, View Point filed a lawsuit against Athena in the Circuit Court for Baltimore City alleging breach of contract.

8. On May 2, 2013, Athena removed the matter to the U.S. District Court for the District Court of Maryland.

9. At the time the matter was removed to the U.S. District Court, View Point was represented by Stephen Snyder, Esquire, Julia R. Arfaa, Esquire and Gary A. Wais, Esquire.

10. On December 2, 2014, Mr. Radding retained your brother, Brennan C. McCarthy, Esquire of Brennan McCarthy and Associates to represent View Point.

11. On December 4, 2014, Brennan McCarthy, entered his appearance in the U.S. District Court as successor counsel for View Point.

12. In early January 2015, you began assisting in the representation of View Point and served as the main point of contact for Mr. Radding.

13. On February 18, 2016, Judge J. Frederick Motz granted Athena's Motion for Summary Judgment.

14. On March 1, 2016, Brennan McCarthy terminated his attorney-client relationship with View Point and Mr. Radding.

15. On March 17, 2016, Brennan McCarthy filed a Notice of Appeal to the U.S. Court of Appeals for the Fourth Circuit to protect View Point's interests.

16. On March 18, 2016, the court entered a Briefing Order directing View Point to file its opening brief and appendix by April 27, 2016.

17. On or about February 20, 2016, View Point retained you to represent it in the Fourth Circuit.

18. On April 15, 2016, you entered your appearance and filed the required Disclosure of Corporate Affiliations and Docketing Statement.

19. On May 2, 2016, the court entered an Order extending the briefing schedule and directing View Point to file its opening brief and appendix by June 2, 2016.

20. On June 2, 2016, you emailed counsel for Athena about requesting a

mutual 8-day extension to the briefing schedule. You suggested extending View Point's filing deadline to June 9, 2016.

21. Opposing counsel agreed to an extension of the briefing schedule.

22. On June 7, 2016, you again emailed Athena's counsel about extending the briefing schedule and suggested moving View Point's filing deadline to June 13, 2016.

23. On June 8, 2016, with the consent of Athena's counsel, you sent an emailed the Chief Circuit Mediator to request assistance in seeking to modify the briefing schedule. You explained that View Point's brief was due on June 2, 2016, but "that it requires additional time to complete and file its brief" and sought an extension until June 13, 2016.

24. On June 8, 2016, a Rule 45 Notice was sent to you. The Notice stated that the court had not received the required opening brief and appendix, and that the case would be dismissed for failure to prosecute if the brief and a motion to extend the filing time were not filed by June 23, 2016.

25. On June 22, 2016, you and Mr. Radding exchanged the following text messages:

[Mr. Radding]: Whatever is going on in the court of appeals you can update me with two sentences about the whole thing. I would like to know what is going on so could you please give me an update thank you[.]

[You]: Jon for God's sake I am drafting and filing the brief and record extract. I will send you copy's [sic] once filed. There is no further update possible.

26. On June 23, 2016, Mr. Radding texted you: "Tom are we alive because I thought today was the very last day. When you get the strength to type back please get in touch and let me know how it went thank you[.]"

27. On June 24 and 25, 2016, you replied to Mr. Radding with the same message: "Sorry, I can't talk right now."

28. At some time prior to June 24, 2016, you, without Mr. Radding's knowledge, determined that Mr. Radding was not competent to participate in the litigation, and you made the decision to not file the brief. Mr. Radding was scheduled to have surgery around this time, and you believed that following the surgery, Mr. Radding would then be competent to participate

in on-going litigation.

29. You failed to file an opening brief or request an extension of time and on June 24, 2016, the Fourth Circuit dismissed the appeal for failure to prosecute pursuant to Local Rule 45.

30. You failed to advise Mr. Radding of the July 24, 2016 order.

31. On July 27, 2016, Mr. Radding sent a text message to you: "Is the case against athenahealth [sic] still in the court of appeals?"

32. On June 28, 2016, you replied to Mr. Radding stating: "Sorry, I can't talk right now."

33. On August 4, 2016, Mr. Radding sent you a series of text messages inquiring about the status of the appeal and the dismissal for failure to file a brief.

34. You replied to Mr. Radding stating: "I can call you in about half hour [sic] – working on reinstating the case and modified briefing schedule[.]"

35. You knowingly and intentionally misrepresented to Mr. Radding that you were "working on reinstating" the appeal.

36. You failed to draft or file any motion to reinstate the appeal or take any steps to protect View Point's claim.

**Radding Foreclosure Matter**

37. Beginning in March 2015, Mr. Radding's home was the subject of a foreclosure action in the Circuit Court for Anne Arundel County. Mr. Radding retained Dallas Houston, Esquire to represent him in the matter.

38. On June 2, 2015, via email, Mr. Radding authorized Ms. Houston to contact you as his personal attorney with any and all information regarding the foreclosure.

39. You were included on emails between Mr. Radding and Ms. Houston, and on occasion you would communicate directly with Ms. Houston regarding the matter.

40. On or about September 5, 2015, Mr. Radding terminated his attorney-client relationship with Ms. Houston.

41. On February 17, 2016, Brennan McCarthy filed a Chapter 13 Bankruptcy Petition on behalf of Mr. Radding to stay the foreclosure case.

42. On March 10, 2016, the bankruptcy case was dismissed.

43. On July 1, 2016, the mortgage holder filed a Motion to Re-Open the foreclosure proceeding.

44. On March 24, 2016, the Court of Appeals of Maryland temporarily suspended you from the practice of law in Maryland for non-payment of the annual assessment of the Client Protection Fund. You remained temporarily suspended until February 16, 2017.

45. Between July 2016 and January 2017, you provided Mr. Radding with legal advice and guidance in his foreclosure matter, including reviewing the Motion to Re-Open, speaking to a representative of the mortgage serving company and providing guidance on completing and filing a loss mitigation package to delay the foreclosure.

**Bar Counsel Investigation**

46. In October 2017, Mr. Radding contacted the Office of Bar Counsel about filing a complaint. Mr. Radding explained that due to his disability, he required assistance with completing the complaint form. An investigator from Bar Counsel's Office, Marc Fiedler, contacted Mr. Radding by telephone and transcribed the complaint. Mr. Radding provided Investigator Fiedler with links to his Google Drive that included copious documents and communications in connection with his complaint.

47. On July 25, 2018, Bar Counsel wrote to you, provided you with specific questions about your representation of Mr. Radding, and requested a written response by August 15, 2018.

48. You failed to provide a timely response to Bar Counsel's July 25, 2018 letter.

49. On September 5, 2018, you requested an extension of the time to submit your written response.

50. Bar Counsel granted your extension request and directed you to provide your written response by September 19, 2018.

51. You failed to provide Bar Counsel with a response by the September 19, 2018 deadline.

52. On October 4, 2018, Bar Counsel wrote to you and requested a written response to specific questions about the representation of Mr. Radding.

53. You failed to respond to Bar Counsel's October 4, 2018 letter.

54. On November 29, 2018, Bar Counsel notified you that the matter had been docketed for further investigation and requested information be provided by December 10, 2018.

55. The Respondent failed to respond to Bar Counsel's November 29, 2018 letter.

56. On December 21, 2018, Bar Counsel Investigator Cheryl Trivelli interviewed you at Bar Counsel's office.

57. On January 8, 2019, you provided a partial response to Bar Counsel's correspondence but failed to provide responses to all of Bar Counsel's specific questions regarding the matter.

58. On March 6, 2019, Bar Counsel wrote to you and enclosed a subpoena to appear for a statement under oath on March 21, 2019 at 11:00 a.m. The March 21 date had been cleared with you in advance.

59. On March 21, 2019 at 10:33 a.m., you contacted Bar Counsel by telephone and email and requested the statement under oath be postponed to allow you to retain counsel.

60. The statement under oath was rescheduled for April 4, 2019 at 11:00 a.m. with your consent.

61. On the morning of April 4, 2019, at 11:11 a.m. you emailed Bar Counsel a document entitled, "Chronology of Representation of Viewpoint Medical Systems, LLC and Jonathan B. Radding."

62. You appeared the morning of April 4, 2019, without counsel, for the statement under oath.

63. During the statement under oath, you admitted that you had not provided a complete response to Bar Counsel and stated: "But I have some hope that in the next couple of days I'll have the full response to you, to accompany

the-and I sent to you today, the chronology, because that's sort of the big background."

64. You failed to provide any further response to Bar Counsel.

65. On May 3, 2019, Bar Counsel wrote to you again and requested a response by May 10, 2019. Bar Counsel sent the letter by mail and email.

66. On May 3, 2019, you confirmed receipt of Bar Counsel's emailed correspondence.

67. You failed to respond to Bar Counsel's May 3, 2019 letter.

68. You have never provided Bar Counsel with a complete written response to Bar Counsel's specific questions concerning your representation of Mr. Radding.

69. The factual averments contained in the attached Exhibit 21 are true and correct.[5]

(Alterations other than footnote in original).

On September 4, 2020—four days after responses to the discovery requests were due—Bar Counsel e-mailed McCarthy, stating that responses to the discovery requests had not been received and asking when McCarthy would provide them. McCarthy did not respond to Bar Counsel's e-mail. In a letter dated September 22, 2020, Bar Counsel advised McCarthy that unless he provided responses to the discovery requests by September 30, 2020, sanctions would be requested. On September 30, 2020, McCarthy e-mailed Bar Counsel, stating that he would try to have the responses completed within the "next several days[.]" On October 1, 2020, Bar Counsel e-mailed McCarthy, stating that Bar Counsel would move for sanctions because responses to the discovery requests were

---

[5]Exhibit 21 was a memorandum in which Trivelli summarized her December 21, 2018 interview of McCarthy.

more than thirty days past due and would consider withdrawing the motion for sanctions if and when McCarthy provided responses to the discovery requests.

On October 5, 2020, McCarthy provided Bar Counsel with a response to the interrogatories and a response to the request for production. In each response, under the heading "General Objection[,]" McCarthy alleged that Bar Counsel had failed to comply with service under Maryland Rule 1-321(a), which governs service of papers filed after the original pleading, and that his response was provided without waiving the objection. Specifically, McCarthy stated that Bar Counsel "sought to provide the Respondent with its discovery requests as electronic files on an external media drive, requiring Respondent to safely access the files through an independent computer, and to then create his own copies of the requests[.]" McCarthy contended that service of discovery requests via an "external media drive" failed to comply with Maryland Rule 1-321(a).

In response to the request for production of documents, McCarthy noted that Bar Counsel had requested that responsive documents be produced for inspection and copying at the Attorney Grievance Commission's office within thirty days. McCarthy stated "that a very large volume of documents responsive to the Requests exist in electronic form, on Google Drive and similar storage platforms, and either are not amenable to production at Petitioner's office, or only at unnecessary and unreasonable expense." McCarthy proposed that the parties agree to a "reasonable and appropriate method" to permit Bar Counsel's access to the electronically stored information to be produced in discovery. In the answer to an interrogatory asking McCarthy to "[i]dentify each person, other than a person intended to be called as an expert witness at trial, having discoverable information that

tends to support a position that [McCarthy] ha[d] taken or intend[ed] to take in this action and state the subject matter of the information possessed by that person[,]" McCarthy responded: "Brennan McCarthy, Wendy Hartman, Thomas Ryan McCarthy, Catherine C[.] McCarthy, Patrick McCarthy, and Mr. Radding's health care providers."

On October 22, 2020, Bar Counsel e-mailed McCarthy and asked that he provide the information necessary to view on Google Drive the electronic documents that he mentioned in the response to the request for production of documents. Bar Counsel also asked McCarthy to state the subject matter of the information possessed by the individuals whom McCarthy listed in the answer to the interrogatory regarding people with discoverable information other than expert witnesses and to identify the healthcare providers referred to in the answer. Bar Counsel noted that McCarthy still had not provided a response to the request for admissions and stated that Bar Counsel would move for sanctions and move to shorten time to respond unless McCarthy responded by October 26, 2020.

On November 4, 2020, Bar Counsel filed with the hearing judge a motion for sanctions and a motion to shorten the time in which McCarthy could respond to the motion for sanctions to within five days of an order granting the motion to shorten time. In the motion for sanctions, Bar Counsel advised that McCarthy had failed to provide any of the discovery materials requested in Bar Counsel's October 22, 2020 e-mail. Bar Counsel requested that the hearing judge impose sanctions in the form of not allowing McCarthy to present any documents at the disciplinary hearing, not allowing him to testify except as to mitigation, and otherwise precluding him from calling witnesses. Alternatively, Bar

- 11 -

Counsel requested that if the hearing judge declined to impose sanctions, the hearing judge issue an order compelling McCarthy to provide the requested discovery materials within five days of the order. In addition, Bar Counsel requested that the hearing judge order that the facts and genuineness of the documents referred to in the request for admissions be deemed admitted pursuant to Maryland Rule 2-424. McCarthy failed to file a response or opposition to the motion for sanctions. On November 6, 2020, McCarthy provided Bar Counsel with a response to the request for admissions.

On November 24, 2020, the hearing judge issued a memorandum opinion and order granting the motion for sanctions. The hearing judge found that McCarthy "failed, after proper service, to timely or properly respond to discovery requests[.]" The hearing judge determined that McCarthy "engaged in a continuing pattern of delay and avoidance in complying with his discovery obligations" and stated that McCarthy's actions were similar to the misconduct in which he had allegedly engaged. The hearing judge found that McCarthy's "discovery failures [were] purposeful and willful, designed to prejudice the Petitioner and hinder the Court in the orderly progress of this matter." The hearing judge ordered that the facts and genuineness of the documents referred to in the request for admission were deemed admitted. The hearing judge precluded McCarthy from presenting any evidence that contradicted the facts or the documents referred to in the request for admissions or that contradicted the averments in the Petition for Disciplinary or Remedial

Action.[6]  The hearing judge allowed McCarthy to testify only about mitigation and precluded him from calling witnesses except as to mitigation.

On November 30, 2020—the date on which the disciplinary hearing was scheduled to occur—before 8:00 a.m., McCarthy filed with the hearing judge "Respondent's Verified Motion to Reconsider and to Vacate Order of November 24 2020 Imposing Sanctions" and "Respondent's Verified Motion to Strike Petitioner's Notice of Discovery Materials[.]"  In both motions, McCarthy contended that service of the discovery requests via a "zip drive" or "thumb drive" failed to comply with Maryland Rule 1-321(a), which he argued requires service of paper copies.  In the motion for reconsideration, McCarthy argued that, because Bar Counsel failed to properly serve the request for admissions, the hearing judge was not permitted to order that the facts and genuineness of the documents referred to in the request for admissions were deemed admitted.  With respect to the interrogatories and request for production of documents, in addition to raising the issue concerning service, McCarthy argued that, under Maryland Rule 2-432(a), which governs motions for sanctions, Bar Counsel was not entitled to seek sanctions because the hearing judge had not issued an order to compel and he had responded to the interrogatories and the request for production.

---

[6]Although Bar Counsel requested in the motion for sanctions that the hearing judge strike the answer to the Petition for Disciplinary or Remedial Action and order that the averments in the petition were deemed admitted, the hearing judge did not do so.  Under Maryland Rules 19-724(c), 2-613, and 2-323(e), the averments in a petition for disciplinary or remedial action are deemed admitted where a hearing judge issues an order of default on the ground that the attorney has failed to timely file an answer to the petition.  See Attorney Grievance Comm'n v. Milton, 467 Md. 433, 437 n.2, 225 A.3d 415, 418 n.2 (2020).  In this case, the hearing judge did not issue an order of default or order that the averments in the Petition for Disciplinary or Remedial Action be deemed admitted but ordered that McCarthy could not present evidence that contradicted the averments.

Later that morning, when the hearing began, McCarthy requested that the hearing judge address the motion for reconsideration. The hearing judge asked McCarthy why he should reconsider the grant of the motion for sanctions when McCarthy had failed to file a response or opposition to the motion. McCarthy stated that, in light of the responses to the discovery requests, he did not think that a response to the motion for sanctions was necessary. When answering additional questions by the hearing judge, McCarthy stated that he was only able to access the discovery requests on the thumb drive at "a computer shop" and that the files were Microsoft Word documents. Bar Counsel stated that the files were actually PDFs, that McCarthy had not indicated that accessing the discovery requests on the thumb drive would be a problem, and that, if he had encountered any trouble with the thumb drive, he could have contacted Bar Counsel, who "would have provided some alternate method." McCarthy reiterated that Maryland Rule 1-321(a) requires that paper copies be served and stated that he expended time and money printing the discovery requests.

The hearing judge denied the motion for reconsideration, stating:

> Mr. McCarthy, this is what I'm trying to understand is you're talking about a thumb drive which universally fits into almost every laptop or desktop computer made that that the U in the U[SB] connection is universal in one of two formats, either Word or PDF which are also ubiquitous which are commonly accessible instantly. And it should have taken minimal, if any, delay for you to access that drive. And you raise this issue post-motion for the first time today.
> I'm going to deny your motion. I believe proper and substantial compliance with the rules were undertaken and you were properly served.

So your motion for reconsideration is denied.[7]

After the hearing judge denied the motion for reconsideration, the disciplinary hearing proceeded. Bar Counsel's case consisted of offering into evidence a document that was approximately 900 pages long, and that was comprised of the request for admissions and the twenty-eight attached exhibits. Over McCarthy's objection, the hearing judge admitted the document into evidence. The only witness at the evidentiary hearing was McCarthy, who testified about mitigation.

On January 20, 2021, the hearing judge filed in this Court an opinion including findings of fact and conclusions of law, determining that McCarthy had violated MARPC 1.3, 1.4(a), 1.4(b), 1.16(a)(1), 5.5(a), 5.5(b)(2), 8.1(b), 8.4(b), 8.4(c), 8.4(d), and 8.4(a).

On February 9, 2021, in this Court, McCarthy filed "Respondent's Exceptions to Circuit Court's Findings of Fact and Conclusion[s] of Law[.]" In his exceptions, McCarthy states that he excepts to the hearing judge's findings and conclusions because he was denied the opportunity to present a defense. McCarthy requests that we designate a new hearing judge and order a new evidentiary hearing, at which he would be permitted to present evidence in defense of Bar Counsel's allegations. McCarthy contends that, under Maryland Rule 2-432(a), the hearing judge erred in granting the motion for sanctions because Bar Counsel did not file a motion to compel and because he had already responded to the interrogatories and request for production. McCarthy argues that the hearing judge

---

[7]In his opinion, the hearing judge indicated that both the motion for reconsideration and the motion to strike had been denied on November 30, 2020. A review of the transcript of the disciplinary hearing, however, reveals that the hearing judge did not rule on the motion to strike.

- 15 -

erred in ordering that the facts and genuineness of the documents referred to in the request for admissions were deemed admitted and in granting the motion for sanctions because Bar Counsel failed to provide service with paper copies of the discovery requests, which he contends is required by Maryland Rule 1-321(a).

On April 9, 2021, we heard oral argument. Upon a careful review of the record and the applicable Maryland Rules, we deny McCarthy's request for a new evidentiary hearing.

McCarthy's contention that the hearing judge erred in granting the motion for sanctions in the absence of Bar Counsel having first filed a motion to compel does not warrant a new evidentiary hearing because McCarthy waived or forfeited the contention and because the hearing judge's grant of the motion for sanctions did not result in prejudice. As to waiver or forfeiture, McCarthy failed to file a response or opposition to the motion for sanctions at any time—whether by the due date for filing a response or before the hearing judge granted the motion for sanctions on November 24, 2020. Moreover, McCarthy did not raise with the hearing judge the necessity of a motion to compel until he filed the motion for reconsideration on November 30, 2020, the day of the disciplinary hearing.

In addition to waiver or forfeiture, the hearing judge's grant of the motion for sanctions did not result in prejudice to McCarthy, given that, as discussed below, the facts and genuineness of the documents referred to in the request for admissions were automatically deemed admitted pursuant to Maryland Rule 2-424(b) once McCarthy missed the deadline for responding to the request. Any evidence that McCarthy would have presented at the disciplinary hearing but for the hearing judge's grant of the motion

for sanctions would not have negated the facts set forth in the request for admissions that were deemed admitted by operation of Maryland Rule 2-424(b). For example, at oral argument in this Court, after being asked whether he could provide a proffer or summary of the evidence that he would have presented at the disciplinary hearing but for the hearing judge's grant of the motion for sanctions, McCarthy stated that he would have presented evidence of his communications with Radding that would have proven that he did not make a misrepresentation to Radding. McCarthy also stated that he would have presented evidence of Radding's emotional and mental condition, which allegedly precluded him (McCarthy) from filing an opening brief on View Point's behalf. The proffered evidence of communications with Radding would not have voided a finding that McCarthy made a knowing and intentional misrepresentation to Radding by telling him that he was working on reinstating the appeal, as that was a fact that was deemed to have been admitted. Similarly, the proffered evidence of Radding's emotional and mental condition would have been of no impact because McCarthy was deemed to have admitted that, without Radding's knowledge, he determined that Radding was not competent to participate in the litigation and decided on his own not to file an opening brief on View Point's behalf. In addition, it was already deemed admitted that McCarthy failed to file an opening brief or request an extension of time to do so and that, on June 24, 2016, the appeal was dismissed and McCarthy failed to advise Radding of the dismissal.

We are aware that Maryland Rule 2-432(a), which governs motions for sanctions, states in pertinent part:

A discovering party may move for sanctions under Rule 2-433(a), without

- 17 -

first obtaining an order compelling discovery under section (b) of this Rule, if a party or any officer, director, or managing agent of a party or a person designated under Rule 2-412 (d) to testify on behalf of a party, fails to appear before the officer who is to take that person's deposition, after proper notice, or if a party fails to serve a response to interrogatories under Rule 2-421 or to a request for production or inspection under Rule 2-422, after proper service.

In other words, under Maryland Rule 2-432(a), "[a] discovering party may move for sanctions" in two scenarios—where there is an order compelling discovery or where there is a complete failure to appear for a deposition or to respond to interrogatories or a request for production or inspection.

Here, although Bar Counsel requested, as an alternative form of relief in the motion for sanctions, an order compelling McCarthy to provide the requested discovery materials, the hearing judge never issued an order compelling discovery. And, when Bar Counsel filed the motion for sanctions, there had not been a complete failure to respond to the interrogatories and request for production. To be sure, before Bar Counsel filed the motion for sanctions, McCarthy responded to the interrogatories and the request for production, as Bar Counsel readily acknowledged in the motion for sanctions. In this case, though, McCarthy waived or forfeited any issue as to the propriety of the hearing judge's grant of the motion for sanctions by failing to file a response or opposition to the request for sanctions.

Similarly, McCarthy is not entitled to a new evidentiary hearing based on his contention that the hearing judge erred in ordering that the matters referred to in the request for admissions were deemed admitted and in granting the motion for sanctions because Bar Counsel failed to effect service as required by Maryland Rule 1-321(a), *i.e.*, Bar Counsel

provided service with a thumb drive instead of paper copies of the request for admissions and other discovery requests. As with the argument regarding the need for a motion to compel, McCarthy waived or forfeited this assertion by failing to timely raise it before the hearing judge.

McCarthy failed to file a motion challenging the sufficiency of the service of the request for admissions or the discovery requests[8] for that matter at any time in the thirty days between service on August 1, 2020 and the deadline for responding to the request for admissions and other discovery requests. As such, the facts and genuineness of the documents referred to in the request for admissions were automatically deemed admitted by operation of Maryland Rule 2-424(b) after McCarthy's failure to timely respond on August 31, 2020. Maryland Rule 2-424(b) provides in pertinent part:

---

[8]For example, McCarthy could have filed a motion to strike service or a motion for a protective order. McCarthy knew that the thumb drive served upon him contained discovery requests and a request for admissions because Bar Counsel attached a document to the thumb drive stating so. In a motion to strike service, McCarthy could have argued that strict compliance with Maryland Rule 1-321(a) was required. As to a motion for a protective order, Maryland Rule 2-403(a)(3) provides in pertinent part:

> On motion of a party, a person from whom discovery is sought, . . . for good cause shown, the court may enter any order that justice requires to protect a party or person from . . . undue burden or expense, including one or more of the following: . . . that the discovery may be had only on specified terms and conditions, including an allocation of the expenses[.]

In a motion for a protective order, McCarthy could have advised the hearing judge that he believed he was entitled to paper copies of the discovery requests, contended that printing them himself was an "undue burden or expense," and requested an order that discovery occur with the condition that Bar Counsel provide him with paper copies of the discovery requests. Md. R. 2-403(a)(3). McCarthy, however, failed to file a motion to strike service, a motion for a protective order, or to otherwise timely bring the matter to the hearing judge's attention in any way.

Each matter of which an admission is requested shall be deemed admitted unless, within 30 days after service of the request or within 15 days after the date on which that party's initial pleading or motion is required, whichever is later, the party to whom the request is directed serves a response signed by the party or the party's attorney.

Under the plain language of Maryland Rule 2-424(b), each matter referred to in a request for admissions is automatically deemed admitted where the party to whom the request is directed misses or ignores the deadline for responding to the request. There is no need for the other party to seek, or for the trial court to issue, an order that the matters referred to in a request for admissions are deemed admitted. Maryland Rule 2-432, which governs motions to compel and motions for sanctions, and Maryland Rule 2-433, which governs sanctions themselves, do not mention admissions, because no motion for sanctions or court order is necessary for matters referred to in a request for admissions to be deemed admitted.

Like the plain language of Maryland Rule 2-424(b), our attorney discipline case law confirms as much. As we stated in Attorney Grievance Comm'n v. Barton, 442 Md. 91, 120-21, 110 A.3d 668, 685 (2015), "Maryland Rule 2-424(b) provides that any matter for which an admission is requested is deemed admitted if a party fails to respond to the request within 30 days." (Footnote omitted). In other words, "one may make an admission by timely filing a response to the request; however, by its terms, *see* Rule 2-424(b), that same result occurs by default whenever the request for admissions is not timely responded to." Attorney Grievance Comm'n v. Robertson, 400 Md. 618, 635, 929 A.2d 576, 586 (2007). By way of illustration, in Attorney Grievance Comm'n v. Kapoor, 391 Md. 505, 530, 894 A.2d 502, 517 (2006), this Court stated that, "[b]ecause Respondent did not respond to Petitioner's Request for Admission of Facts and Genuineness of Documents, each matter

of which an admission was requested was deemed admitted and conclusively established as a matter of law." (Citing Md. R. 2-424).

In this case, as a practical matter, McCarthy had the opportunity to view the request for admissions as soon as the thumb drive was served on him on August 1, 2020. To be sure, in the responses to the interrogatories and the request for production, in the motions for reconsideration and to strike, and at oral argument, McCarthy indicated that he was unwilling to plug the thumb drive into his computer. McCarthy, however, always had the option of doing so, which would have allowed him to immediately view the request for admissions. As the hearing judge pointed out when addressing the motion for reconsideration at the beginning of the disciplinary hearing, McCarthy could have plugged the thumb drive into nearly any computer, and it should have taken him minimal time to view the contents of the thumb drive. Indeed, McCarthy responded to the request for admissions on November 6, 2020, which demonstrates that he was plainly able to access the request for admissions in the form in which Bar Counsel provided it.

That said, McCarthy is correct that Maryland Rule 1-321(a) generally contemplates that a party will serve paper copies of discovery requests. Maryland Rule 1-321(a) governs service of papers filed after the original pleading and states:

> Except as otherwise provided in these rules or by order of court, every pleading and other paper filed after the original pleading shall be served upon each of the parties. If service is required or permitted to be made upon a party represented by an attorney, service shall be made upon the attorney unless service upon the party is ordered by the court. Service upon the attorney or upon a party shall be made by delivery of a copy or by mailing it to the address most recently stated in a pleading or paper filed by the attorney or party, or if not stated, to the last known address. Delivery of a copy within this Rule means: handing it to the attorney or to the party; or leaving it at the

office of the person to be served with an individual in charge; or, if there is no one in charge, leaving it in a conspicuous place in the office; or, if the office is closed or the person to be served has no office, leaving it at the dwelling house or usual place of abode of that person with some individual of suitable age and discretion who is residing there. Service by mail is complete upon mailing.

The use of the phrase "delivery of a copy" in Maryland Rule 1-321(a) suggests that delivery of a physical copy—*i.e.*, a paper copy—is anticipated. This Court adopted Maryland Rule 1-321 in 1984, before electronic documents were as ubiquitous as they are today. Despite the growth in use of electronic documents and media in the decades since then, this Court has not amended Maryland Rule 1-321 to indicate that delivery of a copy may include electronic documents or copies.

In this case, though, McCarthy failed to timely bring to the hearing judge's attention any contention that service of the request for admissions via a thumb drive did not strictly comply with Maryland Rule 1-321(a). Instead, McCarthy belatedly responded (over two months after the response was due) to the request for admissions, which he had access to from the day Bar Counsel served the request on him, and on the day of the disciplinary hearing filed a motion to strike notice of service. Plainly, McCarthy waived or forfeited any issue as to service of the request for admissions (as well as the service of the other discovery requests), and the facts and genuineness of the documents referred to in the request for admissions were automatically deemed admitted by operation of Maryland Rule 2-424(b). Simply put, with regard to both of the preliminary issues that he raises, *i.e.*, the need for a motion to compel and sufficiency of service, McCarthy sat on his hands. Before the hearing judge, he failed to take any timely action whatsoever as to either matter. As

such, there is no basis for determining an abuse of discretion on the hearing judge's part in denying the motion for reconsideration.

We now turn to the merits of the attorney discipline proceedings. For the below reasons, we disbar McCarthy.

## BACKGROUND

The hearing judge found the following facts, which we summarize.

On June 14, 1989, this Court admitted McCarthy to the Bar of Maryland. At all relevant times, McCarthy maintained an office for the practice of law in Anne Arundel County.

### McCarthy's Representation of View Point in Breach of Contract Case

In or about 2002, Radding established View Point, a healthcare technology company. On February 25, 2013, in the Circuit Court for Baltimore City, View Point sued Athena Health, Inc. ("Athena") for breach of contract. On May 2, 2013, Athena removed the case to the United States District Court for the District of Maryland. Eventually, Athena moved for summary judgment.

In 2014, Radding suffered a brain injury that caused him to experience overstimulation of brain functions, affected his short-term memory, and limited his ability to verbally communicate for extended periods of time. The hearing judge found that McCarthy knew about Radding's condition, as he acknowledged so in the answer to the Petition for Disciplinary or Remedial Action and while testifying at the evidentiary hearing. In or about December 2014, Radding terminated the representation of the attorney who had been representing View Point in the contract case and retained McCarthy's brother to

represent View Point. In January 2015, McCarthy began assisting his brother in the representation of View Point and began serving as the main point of contact for Radding.

On February 18, 2016, the United States District Court for the District of Maryland granted the motion for summary judgment against View Point and entered judgment in Athena's favor. In March 2016, on View Point's behalf, McCarthy's brother filed a notice of appeal to the Fourth Circuit. In the same month, McCarthy's brother terminated his representation of View Point.

On March 18, 2016, the Fourth Circuit issued a briefing order directing View Point to file an opening brief and an appendix by April 27, 2016. On or about April 15, 2016, Radding retained McCarthy to represent View Point before the Fourth Circuit, and McCarthy entered his appearance on View Point's behalf in the Fourth Circuit.[9] On May 2, 2016, the Fourth Circuit issued an order changing the briefing schedule and directing View Point to file an opening brief and an appendix by June 2, 2016. On June 8, 2016, the Fourth Circuit sent McCarthy a notice stating that it had not received an opening brief and an appendix on View Point's behalf and that the Fourth Circuit would dismiss the appeal for failure to prosecute unless View Point filed an opening brief, an appendix, and a motion to extend time by June 23, 2016. McCarthy failed to file an opening brief, an appendix, or a motion to extend time on View Point's behalf and failed to inform Radding of the shortfalls.

_____

[9]According to the request for admissions, McCarthy was retained to represent View Point before the Fourth Circuit on or about February 20, 2016, and McCarthy entered his appearance on View Point's behalf before the Fourth Circuit on April 15, 2016.

On June 22, 2016, Radding sent McCarthy a text message that stated: "Whatever is going on in the court of appeals you can update me with two sentences about the whole thing. I would like to know what is going on so could you please give me an update thank you[.]" Later on the same day, McCarthy sent Radding a text message that stated: "Jon for God's sake I am drafting and filing the brief and record extract. I will send you copy's [*sic*] once filed. There are no further updates possible." (Brackets added by the hearing judge). On June 23, 2016—the deadline for View Point to file an opening brief, an appendix, and a motion to extend time—Radding sent McCarthy a text message that stated: "Tom are we alive because I thought today was the very last day. When you get the strength to type back please get in touch and let me know how it went thank you[.]" On June 24 and 25, 2016, McCarthy sent Radding text messages that stated: "Sorry, I can't talk right now."

On June 24, 2016, the Fourth Circuit issued an order dismissing the appeal for failure to prosecute. McCarthy failed to inform Radding of the dismissal of the appeal. Between June and July 2016, Radding sent McCarthy several text messages inquiring about the status of the appeal. McCarthy sent Radding a text message in reply to each that stated: "Sorry, I can't talk right now."

At some point, Radding learned on his own that the Fourth Circuit had dismissed the appeal. On August 4, 2016, Radding sent McCarthy multiple text messages inquiring about the status of the appeal and the dismissal. Later on the same day, McCarthy sent Radding a text message that stated: "I can call you in about half hour  – working on reinstating the case and modified briefing schedule[.]" McCarthy never drafted or filed a

motion to reinstate the appeal or took any other steps to protect View Point's claim.  The

hearing judge found that McCarthy's statement "was a knowing and intentional

misrepresentation made in an attempt to placate Mr. Radding and conceal the fact that the

Respondent had not actually made any effort at all to reinstate View Point's appeal[.]"

**McCarthy's Representation of Radding in Foreclosure Case**

In March 2015, Radding's home became the subject of a foreclosure case in the

Circuit Court for Anne Arundel County.  In September 2015, Radding terminated the

representation of the attorney who had been representing him in the foreclosure case.  In

October 2015, Radding began exclusively relying on advice from McCarthy concerning

the foreclosure case.

On March 24, 2016, this Court temporarily suspended McCarthy from the practice

of law in Maryland for nonpayment of the annual assessment to the Client Protection Fund.

McCarthy failed to inform Radding of the suspension and continued to provide him with

advice concerning the foreclosure case, including guidance regarding the completion of a

loss mitigation package.  Additionally, on Radding's behalf and as his counsel, during the

time of the suspension, McCarthy communicated with representatives of the mortgage

servicing company.  On February 16, 2017, this Court reinstated McCarthy to the practice

of law in Maryland.

**Bar Counsel's Investigation**

In October 2017, Radding caused a complaint against McCarthy to be filed with Bar

Counsel.  On July 25, 2018, Bar Counsel wrote to McCarthy and requested information

regarding his representation of Radding by August 15, 2018.  McCarthy failed to timely

respond. On September 5, 2018, McCarthy requested an extension of time to respond to Bar Counsel's request for information. Bar Counsel granted the request and directed McCarthy to submit a written response by September 19, 2018. McCarthy again failed to respond.

On October 4, 2018, Bar Counsel wrote to McCarthy and requested a written response by October 19, 2018. McCarthy once again failed to respond. On November 29, 2018, Bar Counsel notified McCarthy that the matter had been docketed for further investigation and requested a written response by December 10, 2018. McCarthy yet again failed to respond.

An investigator for Bar Counsel contacted McCarthy and arranged to interview him on December 21, 2018. McCarthy appeared for the interview but failed to bring a written response to Bar Counsel's request for information. On January 8, 2019, McCarthy provided a partial response to Bar Counsel's request for information.

Bar Counsel communicated with McCarthy and confirmed with him that he would be available for a statement under oath on March 21, 2019. On March 6, 2019, Bar Counsel wrote to McCarthy and enclosed a subpoena to appear for a statement under oath on March 21, 2019 at 11:00 a.m. On March 21, 2019, at 10:33 a.m., McCarthy contacted Bar Counsel by telephone and e-mail and requested that the statement under oath be postponed to give him time to retain counsel. With McCarthy's consent, Bar Counsel rescheduled the statement under oath for April 4, 2019 at 11:00 a.m.

On April 4, 2019, at 11:11 a.m., McCarthy e-mailed Bar Counsel a document entitled: "Chronology of Representation of View[ P]oint Medical Systems, LLC and

Jonathan B. Radding." In the document, McCarthy failed to respond to Bar Counsel's questions regarding his representation of Radding. At approximately 11:35 a.m., without counsel, McCarthy appeared for the statement under oath. While giving the statement under oath, McCarthy stated that he intended to provide Bar Counsel with a full written response "in the next couple of days." McCarthy failed to provide Bar Counsel with an additional response.

On May 3, 2019, Bar Counsel wrote to McCarthy and requested a response by May 10, 2019. McCarthy e-mailed Bar Counsel to confirm that he received the letter but failed to otherwise respond in any manner.

### Aggravating Factors and Mitigating Factors

The hearing judge found seven aggravating factors. First, the hearing judge found that McCarthy had a dishonest or selfish motive, given that he "made a knowing and intentional misrepresentation of material fact to a client in an effort to conceal the extent of his misconduct." Second and third, the hearing judge found that McCarthy engaged in a pattern of misconduct and multiple violations of the MARPC, given that McCarthy violated numerous MARPC when representing View Point and Radding and during Bar Counsel's investigation. Fourth, the hearing judge found that McCarthy engaged in bad faith obstruction of this attorney discipline proceeding, as shown by his knowing and intentional failure to comply with Bar Counsel's many requests for information during Bar Counsel's investigation and his purposeful failure to provide timely responses to discovery requests. Fifth, the hearing judge found that McCarthy refused to acknowledge the wrongful nature of his misconduct and attempted to blame Radding for his own failures.

- 28 -

Sixth, the hearing judge found that Radding, the victim, had suffered a brain injury in 2014, which affected his memory and ability to communicate verbally, that McCarthy knew as much, and that, as such, McCarthy "had a heightened responsibility to protect the interests of his client and truthfully, timely and fully communicate with him, as well as prosecute his interests in all legal matters for which he was entrusted." The hearing judge noted that, in mitigation testimony, McCarthy attempted to use Radding's medical and mental conditions as an excuse for his misconduct and stated that McCarthy had "demonstrated a profound lack of understanding, empathy and remorse for a vulnerable victim." Seventh, the hearing judge found that McCarthy had substantial experience in the practice of law, given that he was admitted to the Bar of Maryland in 1989.

The hearing judge found that McCarthy's misconduct was mitigated by the absence of prior attorney discipline and good character and reputation.[10] The hearing judge determined that McCarthy failed to establish, by a preponderance of the evidence, that his misconduct was mitigated by personal or emotional problems or the unlikelihood of repetition of his misconduct. The hearing judge "categorically rejected" McCarthy's "breathtaking assertion" at the disciplinary hearing that Radding "caused him emotional problems to the extent that he missed filing deadlines and then lied to" Radding. The

[10]At the disciplinary hearing, over Bar Counsel's objection, the hearing judge permitted McCarthy to testify about his own character and reputation. McCarthy testified that he had previously worked as an official with the World Bank and was responsible for and accepted as an expert in "global integrity, especially international -- in internationally financed development projects." McCarthy testified that he has a reputation for providing pro bono assistance "for people who have needs not only here in the United States, but also abroad." McCarthy added that he had performed work for a number of clients on a pro bono basis in the District of Columbia in landlord-tenant matters.

hearing judge stated that, at the disciplinary hearing, after he asked McCarthy to address the alleged unlikelihood of repetition of his misconduct, McCarthy "continued to blame" Radding "and never even addressed the mechanics of meeting deadlines, truthfully communicating with clients or seeking to decline further representation and striking one's appearance when appropriate."[11]

## STANDARD OF REVIEW

In an attorney discipline proceeding, this Court reviews for clear error a hearing judge's findings of fact and reviews without deference a hearing judge's conclusions of law. See Md. R. 19-741(b)(2)(B); Attorney Grievance Comm'n v. Slate, 457 Md. 610, 626, 180 A.3d 134, 144 (2018); Md. R. 19-741(b)(1). This Court determines whether clear and convincing evidence establishes that a lawyer violated an MARPC. See Md. R. 19-727(c).

## DISCUSSION

### (A) Findings of Fact

With the exception of his request for a new evidentiary hearing, which is addressed above, McCarthy does not specifically except to the hearing judge's findings of fact. Bar Counsel does not except to any of the hearing judge's findings of fact. Under Maryland

---

[11]At the disciplinary hearing, McCarthy testified that "significant emotional and personal issues [] arose here primarily because of the behavior that was exhibited by" Radding and that Radding was "an extremely difficult client. He was suffering from a number of physical ailments but also mental ailments." Later, the hearing judge brought up the mitigating factor of unlikelihood of repetition of misconduct and asked McCarthy how, in the future, he would deal with missed deadlines, a difficult client, or a client with a disability. When responding to the hearing judge's question, McCarthy testified that Radding caused him "emotional distress[,]" which "clouded[ his] judgment[.]"

Rule 19-741(b)(2)(A), where neither Bar Counsel nor the respondent excepts to a hearing judge's findings of fact, this Court "may treat the findings of fact as established." In other words, Maryland Rule 19-741(b)(2)(A) gives this Court the discretion to treat findings of fact as established in the absence of exceptions to those findings. See Attorney Grievance Comm'n v. Colton-Bell, 434 Md. 553, 572, 76 A.3d 1096, 1107 (2013). In this case, we exercise our discretion to treat the hearing judge's findings of fact as established.

### (B) Conclusions of Law

Again, other than the request for a new evidentiary hearing, McCarthy does not specifically except to the hearing judge's conclusions of law and Bar Counsel has no exceptions. To the extent that the hearing judge determined that McCarthy violated MARPC 1.4(a)(3), we do not sustain the violation as Bar Counsel did not charge a violation of the subsection in the Petition for Disciplinary or Remedial Action. We uphold the remainder of the hearing judge's conclusions of law.

### MARPC 1.3 (Diligence)

"An attorney shall act with reasonable diligence and promptness in representing a client." MARPC 1.3. The hearing judge concluded that McCarthy violated MARPC 1.3 in the following three instances. First, McCarthy failed to file an opening brief or an appendix on View Point's behalf by the initial June 2, 2016 deadline. Second, McCarthy failed to file an opening brief, an appendix, or a motion to extend time on View Point's behalf by the June 23, 2016 deadline. Third, McCarthy failed to adequately communicate with Radding about the appeal. Clear and convincing evidence supports the hearing judge's conclusions. By failing to meet more than one filing deadline and failing to

- 31 -

conscientiously communicate with Radding, McCarthy failed to act with reasonable diligence and promptness.

## MARPC 1.4 (Communication)

MARPC 1.4 states:

(a) An attorney shall:

(1) promptly inform the client of any decision or circumstance with respect to which the client's informed consent, as defined in Rule 19-301.0 (f) (1.0), is required by these Rules;

(2) keep the client reasonably informed about the status of the matter;

(3) promptly comply with reasonable requests for information; and

(4) consult with the client about any relevant limitation on the attorney's conduct when the attorney knows that the client expects assistance not permitted by the [MARPC] or other law.

(b) An attorney shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

The hearing judge concluded that McCarthy violated MARPC 1.4(a) and 1.4(b) in the following four instances. First, McCarthy failed to inform Radding that he had failed to file an opening brief or an appendix on View Point's behalf by the June 2, 2016 deadline and that he had failed to file an opening brief, an appendix, or a motion to extend time on View Point's behalf by the June 23, 2016 deadline. Second, on June 22, 2016, McCarthy misstated to Radding that he was "drafting and filing the brief and record extract." Third, on August 4, 2016, McCarthy knowingly and intentionally misrepresented to Radding that he was "working on reinstating the case and modified briefing schedule[.]" Fourth, McCarthy failed to inform Radding that, on March 24, 2016, this Court suspended him

from the practice of law in Maryland for nonpayment of the annual assessment to the Client Protection Fund. The hearing judge also concluded that McCarthy violated MARPC 1.4 by "failing to provide substantive and truthful responses to Mr. Radding's numerous requests for information regarding the appeal."[12]

Given that MARPC 1.4(a)(2) requires an attorney to "keep the client reasonably informed about the status of the matter" and that MARPC 1.4(b) requires an attorney to "explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation[,]" it is plain that the hearing judge's conclusion that McCarthy violated MARPC 1.4(a) and 1.4(b) is supported by clear and convincing evidence. McCarthy did not inform Radding of his failures to meet filing deadlines, misstated to Radding that he was drafting and filing a brief and record extract, and knowingly and intentionally misrepresented to Radding that he was working on reinstating the appeal. Knowing of McCarthy's failure to meet filing deadlines and misrepresentations necessarily would have assisted Radding in making informed decisions about the representation, including whether to terminate McCarthy's representation of View Point. MARPC 1.4(a)(4) requires an attorney to "consult with the client about any relevant limitation on the attorney's conduct when the attorney knows that the client expects

---

[12]Although Bar Counsel charged McCarthy with violating MARPC 1.4(a)(1), the hearing judge does not appear to have concluded that McCarthy violated that provision, which requires an attorney to "promptly inform the client of any decision or circumstance with respect to which the client's informed consent . . . is required[.]" Nothing in the hearing judge's findings of fact indicates that McCarthy was ever required to obtain Radding's informed consent. And, as mentioned above, Bar Counsel did not charge McCarthy with violating MARPC 1.4(a)(3), which requires an attorney to "promptly comply with reasonable requests for information."

assistance not permitted by the [MARPC] or other law." The hearing judge's conclusion

that McCarthy violated MARPC 1.4(a)(4) by failing to inform Radding of his suspension

from the practice of law in Maryland for nonpayment of the annual assessment to the Client

Protection Fund is also supported by clear and convincing evidence.[13]

### MARPC 1.16(a)(1) (Terminating Representation), 5.5(a) (Unauthorized Practice of Law), 5.5(b)(2) (Misrepresenting that Attorney is Admitted), and 8.4(b) (Criminal Act)

The hearing judge concluded that McCarthy violated MARPC 1.16(a)(1), 5.5(a),

5.5(b)(2), and 8.4(b). MARPC 1.16(a)(1) provides that "an attorney shall not represent a

---

[13]We are mindful that MARPC 1.4(a)(4) requires that the attorney know that the client expects assistance not permitted by law and that the hearing judge did not expressly conclude that McCarthy knew he had been suspended from the practice of law in Maryland. It is an attorney's obligation to keep current the attorney's contact information with the Client Protection Fund and to satisfy the annual assessment obligation. In 2016, at the time that McCarthy was suspended from the practice of law in Maryland for nonpayment of the annual assessment to the Client Protection Fund, Maryland Rule 16-811.5(b) (2016) required that each attorney provide to the trustees of the Client Protection Fund written notice "of every change in the attorney's resident address, business address, e-mail address, telephone number, or facsimile number within 30 days of the change" and provided that the trustees had "the right to rely on the latest information received by them for all billing and other correspondence." Maryland Rule 16-811.6(b)(1) (2016) provided that the trustees send a delinquency notice to an attorney about the failure to pay the annual assessment and that such a delinquency notice include the statement that failure to pay the amount owed within thirty days would "result in the entry of an order by the Court of Appeals prohibiting the attorney from practicing law in the State." Maryland Rule 16-811.6(b)(2) (2016) provided that "mailing by the trustees of the notice of delinquency constitute[d] service of the notice on the attorney." If an attorney failed to remedy the delinquency and an order of temporary suspension was entered, a copy of the order was required to be mailed to each attorney named in the suspension order at the attorney's last address as it appeared with the trustees. See Md. R. 16-811.6(d)(2) (2016). Mailing of a copy of the order to the attorney constituted service of the order on the attorney. See id. In addition, once an order of temporary suspension was issued, in addition to notice of such an order being distributed to various courts and offices, the Clerk of the Court of Appeals was required to post the order to the Judiciary's website. See Md. R. 16-811.8(a), (b) (2016).

client or, where representation has commenced, shall withdraw from the representation of a client if[] the representation will result in violation of the [MARPC] or other law[.]" MARPC 5.5(a) provides that "[a]n attorney shall not practice law in a jurisdiction in violation of the regulation of the legal profession in that jurisdiction, or assist another in doing so." MARPC 5.5(b)(2) provides that "[a]n attorney who is not admitted to practice in this jurisdiction shall not . . . hold out to the public or otherwise represent that the attorney is admitted to practice law in this jurisdiction." MARPC 8.4(b) provides that "[i]t is professional misconduct for an attorney to . . . commit a criminal act that reflects adversely on the attorney's honesty, trustworthiness or fitness as an attorney in other respects[.]"

Md. Code Ann., Bus. Occ. & Prof. (1989, 2018 Repl. Vol.) ("BOP") § 10-601(a) provides that, "[e]xcept as otherwise provided by law, a person may not practice, attempt to practice, or offer to practice law in the State unless admitted to the Bar." Generally, a person who violates BOP § 10-601 "is guilty of a misdemeanor and on conviction is subject to a fine not exceeding $5,000 or imprisonment not exceeding 1 year or both." BOP § 10-606(a)(3).

The hearing judge's conclusions regarding McCarthy's violation of the above MARPC are supported by clear and convincing evidence. The record demonstrates that McCarthy was suspended from the practice of law in Maryland on March 24, 2016 for nonpayment of the Client Protection Fund's annual assessment. On February 16, 2017, nearly a year later, McCarthy was reinstated to the practice of law in Maryland. McCarthy violated MARPC 1.16(a)(1) by continuing to provide legal advice to Radding and

contacting a representative of a mortgage servicing company as Radding's attorney while he was suspended from the practice of law in Maryland for nonpayment of the annual assessment to the Client Protection Fund. Likewise, McCarthy violated MARPC 5.5(a) and 5.5(b)(2) by engaging in the unauthorized practice of law and holding himself out to be Radding's attorney when he represented and provided legal advice to Radding in the foreclosure case and contacted a mortgage servicer on Radding's behalf while he was suspended from the practice of law in Maryland. Given that BOP § 10-601(a) prohibits practicing law in Maryland without being admitted to the Bar of Maryland, it is evident that by continuing to provide legal advice to Radding and taking action as his attorney, *i.e.*, practicing law, after his suspension, McCarthy violated BOP § 10-601(a) (which is a misdemeanor offense), and, as the hearing judge found, also violated MARPC 8.4(b).

**MARPC 8.1(b) (Failing to Respond to Lawful Demand for Information)**

"[A]n attorney . . . in connection with a disciplinary matter[] shall not . . . knowingly fail to respond to a lawful demand for information from [a] disciplinary authority[.]" MARPC 8.1(b). The hearing judge concluded that McCarthy violated MARPC 8.1(b) by knowingly and intentionally failing to provide timely and complete responses to Bar Counsel's lawful demands for information. Clear and convincing evidence supports the hearing judge's conclusion. After Radding caused a complaint to be filed against McCarthy, McCarthy failed to respond to requests for information that Bar Counsel made in July 2018, September 2018, October 2018, and November 2018. Additionally, other than confirming that he had received Bar Counsel's letter, McCarthy failed to respond to a request for information that Bar Counsel made in May 2019. Although McCarthy provided

Bar Counsel with some information in the form of a partial response in January 2019 and a chronology document that was not responsive to Bar Counsel's requests in April 2019, he never provided Bar Counsel with a complete response to Bar Counsel's questions concerning his representation of View Point and Radding.

## MARPC 8.4(c) (Dishonesty, Fraud, Deceit, or Misrepresentation)

"It is professional misconduct for an attorney to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation." MARPC 8.4(c). The hearing judge concluded that McCarthy violated MARPC 8.4(c) by knowingly and intentionally misrepresenting to Radding that he was "working on reinstating the case and modified briefing schedule." Clear and convincing evidence supports the hearing judge's conclusion. McCarthy's statement to Radding was intentionally dishonest; he plainly failed to draft a motion to reinstate the appeal. Indeed, as the hearing judge found, "[d]espite his assurances to [] Radding, [McCarthy] failed to draft or file a motion to reinstate the appeal or take any steps to protect View Point's claim."

A review of the record reveals that, after the text message of August 4, 2016, in which McCarthy misrepresented that he was working on reinstating the appeal, Radding repeatedly texted McCarthy over a period of six months, until February 2017, at various times inquiring about the status of the appeal and whether the case had been reinstated.[14] For example, on August 22, 2016, at 10:59:45 a.m., Radding texted:

---

[14]The request for admissions and exhibits, which were admitted into evidence at the disciplinary hearing, included an exhibit containing a series of text messages between Radding and McCarthy.

Tom I'm asking you if you intend to file court papers to reinstate the lawsuit at the Appellate Court including a brief motion or any other documents that are required by the federal court to have the case reinstated and do you plan on filing the next question is when do you plan on filing those are very simple questions. Please advise me it's very simple thank you[.]

Later on the same day, at 05:34:17 p.m., Radding texted:

Tom I ask[ed] my friend to borrow the money for the legal brief and he's asking me if it has been filed and I told him no it's two months delayed and my attorney has not given me a date yet. . . . Please advise me what you plan to do with the $600 for the appeal and that it's going to be put to use for what it was given to you for and that is to follow [sic] the legal brief.

As late as February 4, 2017, Radding texted:

Tom could you call me back please. Just let me know what time and day is good for you and you can call me anytime actually that would be fine thank you I hope everything's going well and you're getting close to filing the appeal. The last time we discussed the appeal you were working on it and said you would communicate with me when you were close to filing. Can you please tell me if we getting close to filing yet thank you.

On February 12, 2017, McCarthy texted Radding: "You did not give me any monies for the appeal or any other purpose[.]" Radding and McCarthy thereafter exchanged messages about whether Radding had forwarded money to McCarthy (with McCarthy disputing this) and the status of the appeal. The final text message in the exhibit is dated February 14, 2017, at 02:37:34 p.m. in which Radding texted McCarthy that he had determined that a person he identified as the clerk for the Fourth Circuit said "that the case cannot be reopened its been too long and the statute for filing is over." Radding ended the text message by asking McCarthy what he planned to do about the situation. The text messages confirm the hearing judge's conclusion that, despite advising Radding that he was working on having the appeal reinstated, this was a knowing and intentional

- 38 -

misrepresentation as McCarthy failed to draft or file a motion to reinstate the appeal or take any measures to safeguard View Point's claim even with Radding's continual inquiries.

### MARPC 8.4(d) (Conduct that is Prejudicial to Administration of Justice)

"It is professional misconduct for an attorney to . . . engage in conduct that is prejudicial to the administration of justice[.]" MARPC 8.4(d). "Generally, a lawyer violates M[A]RPC 8.4(d) where the lawyer's conduct would negatively impact the perception of the legal profession of a reasonable member of the public." Slate, 457 Md. at 645, 180 A.3d at 155 (cleaned up). The hearing judge concluded that McCarthy violated MARPC 8.4(d) by failing to diligently protect Radding's interests and attempting to conceal his failures by initially ignoring Radding and then making a knowing and intentional misrepresentation to Radding. Clear and convincing evidence supports the hearing judge's conclusion. Among other things, McCarthy's failures of diligence and communication, as well as his knowing and intentional misrepresentation to Radding, would certainly negatively impact the perception of the legal profession of a reasonable member of the public.

### MARPC 8.4(a) (Violating the MARPC)

"It is professional misconduct for an attorney to[] violate . . . the" MARPC. MARPC 8.4(a). Clear and convincing evidence supports the hearing judge's conclusion that McCarthy violated MARPC 8.4(a). As discussed above, McCarthy violated MARPC 1.3, 1.4(a), 1.4(b), 1.16(a)(1), 5.5(a), 5.5(b)(2), 8.1(b), 8.4(b), 8.4(c), and 8.4(d).

### (C) Sanction

Bar Counsel recommends that we disbar McCarthy. At oral argument, after being

asked his recommendation as to the appropriate sanction, McCarthy suggested that we consider suspending him from the practice of law in Maryland with the right to apply for reinstatement. McCarthy did not expressly characterize the proposed suspension as an indefinite one or identify a period of time for such a suspension.

In Slate, 457 Md. at 646-47, 180 A.3d at 155-56, this Court stated:

This Court sanctions a lawyer not to punish the lawyer, but instead to protect the public and the public's confidence in the legal profession. This Court accomplishes these goals by: (1) deterring other lawyers from engaging in similar misconduct; and (2) suspending or disbarring a lawyer who is unfit to continue to practice law.

In determining an appropriate sanction for a lawyer's misconduct, this Court considers: (1) the M[A]RPC that the lawyer violated; (2) the lawyer's mental state; (3) the injury that the lawyer's misconduct caused or could have caused; and (4) aggravating factors and/or mitigating factors.

Aggravating factors include: (1) prior attorney discipline; (2) a dishonest or selfish motive; (3) a pattern of misconduct; (4) multiple violations of the M[A]RPC; (5) bad faith obstruction of the attorney discipline proceeding by intentionally failing to comply with rules or orders of the disciplinary agency; (6) submission of false evidence, false statements, or other deceptive practices during the attorney discipline proceeding; (7) a refusal to acknowledge the misconduct's wrongful nature; (8) the victim's vulnerability; (9) substantial experience in the practice of law; (10) indifference to making restitution or rectifying the misconduct's consequences; (11) illegal conduct, including that involving the use of controlled substances; and (12) likelihood of repetition of the misconduct.

Mitigating factors include: (1) the absence of prior attorney discipline; (2) the absence of a dishonest or selfish motive; (3) personal or emotional problems; (4) timely good faith efforts to make restitution or to rectify the misconduct's consequences; (5) full and free disclosure to Bar Counsel or a cooperative attitude toward the attorney discipline proceeding; (6) inexperience in the practice of law; (7) character or reputation; (8) a physical disability; (9) a mental disability or chemical dependency, including alcoholism or drug abuse, where: (a) there is medical evidence that the lawyer is affected by a chemical dependency or mental disability; (b) the chemical dependency or mental disability caused the misconduct; (c) the

lawyer's recovery from the chemical dependency or mental disability is demonstrated by a meaningful and sustained period of successful rehabilitation; and (d) the recovery arrested the misconduct, and the misconduct's recurrence is unlikely; (10) delay in the attorney discipline proceeding; (11) the imposition of other penalties or sanctions; (12) remorse; (13) remoteness of prior violations of the M[A]RPC; and (14) unlikelihood of repetition of the misconduct.

(Cleaned up).

Earlier this year, in Attorney Grievance Comm'n v. Davenport, 472 Md. 20, 36, 31-34, 244 A.3d 1032, 1041, 1038-40 (2021), this Court disbarred an attorney who violated MARPC 1.1, 1.2(a), 1.3, 1.4(a)(2), 1.4(a)(3), 1.4(b), 1.5(a), 1.15(a), 1.16(d), 8.1(b), and 8.4(d). The attorney abandoned his representation of a client in a divorce and custody case and failed to provide any services of value, such as appearing at hearings, notifying the client of court dates, and providing the client with information regarding the status of the case. See id. at 35, 27, 244 A.3d at 1040-41, 1036. We pointed out that, if the attorney "had a valid excuse for his inability to represent [his client], he did not communicate that to anyone, including his client." Id. at 35-36, 244 A.3d at 1041. The attorney also charged an unreasonable fee, failed to deposit the unearned fee into an attorney trust account, failed to refund the unearned fee, failed to notify the client and the trial court of the termination of the representation, and knowingly and intentionally failed to respond to Bar Counsel's numerous lawful demands for information. See id. at 33-34, 244 A.3d at 1039-40.

The attorney did not appear at the disciplinary hearing or otherwise participate in the disciplinary process and as such failed to offer evidence of any mitigating factors. See id. at 25, 35, 244 A.3d at 1035, 1040. The attorney's misconduct was aggravated by multiple violations of the MARPC, bad faith obstruction of the attorney discipline

proceeding, substantial experience in the practice of law, and indifference to making restitution. See id. at 35, 244 A.3d at 1040. In imposing the sanction of disbarment, we observed that we had previously disbarred attorneys who abandoned the representation of clients and failed to respond to Bar Counsel's demands for information. See id. at 36, 244 A.3d at 1041.

Bar Counsel draws our attention to the case of Attorney Grievance Comm'n v. Miller, 467 Md. 176, 183, 238, 221, 223 A.3d 976, 1012, 980, 1002 (2020), in which this Court disbarred an attorney who violated MARPC 1.3, 1.4(a), 1.4(b), 1.5(a), 8.1(a), 8.1(b), 8.4(c), and 8.4(d). In Miller, a client retained the attorney to represent her in an adoption proceeding, and the attorney drafted, but never filed, a petition for adoption. See id. at 184-85, 191, 223 A.3d at 981, 985. The attorney failed to inform the client as much, failed to keep the client informed regarding any outstanding balances, charged an unreasonable fee, and failed to comply with all of Bar Counsel's lawful demands for documentation. See id. at 191-92, 223 A.3d at 985. Additionally, the attorney made misrepresentations, and provided falsified documents, to the client and Bar Counsel. See id. at 192, 223 A.3d at 985.

The attorney's misconduct was aggravated by a dishonest or selfish motive, multiple violations of the MARPC, submission of false statements during the attorney discipline proceeding, and substantial experience in the practice of law. See id. at 234, 223 A.3d at 1009-10. The attorney's misconduct was mitigated by the absence of prior attorney discipline and good character and reputation. See id. at 225, 223 A.3d at 1004. This Court observed that "disbarment is generally the appropriate sanction for intentionally dishonest

conduct, unless an attorney can establish the existence of 'compelling extenuating circumstances justifying a lesser sanction.'" Id. at 228, 223 A.3d at 1006 (quoting Attorney Grievance Comm'n v. Vanderlinde, 364 Md. 376, 413, 773 A.2d 463, 485 (2001)). This Court determined that, "given the multitude of violations of the MARPC[ the attorney] engaged in and the overarching dishonesty undergirding a substantial number of these violations, disbarment [was] the only appropriate sanction." Miller, 467 Md. at 238, 223 A.3d at 1012.

Here, McCarthy violated numerous MARPC in his representation of View Point and Radding. McCarthy missed filing deadlines, failed to disclose that he missed the filing deadlines, failed to adequately communicate with his client, engaged in the unauthorized practice of law, and failed to timely respond to lawful demands from Bar Counsel. And, significantly, McCarthy violated MARPC 8.4(c) by knowingly and intentionally misrepresenting to Radding that he was working on having View Point's appeal reinstated.

McCarthy's misconduct caused harm. Because of McCarthy's failure to meet filing deadlines, the Fourth Circuit dismissed View Point's appeal. The dismissal effectively eliminated any chance of reviving View Point's claim for breach of contract, as to which the United States District Court for the District of Maryland had granted summary judgment in the defendant's favor.

The hearing judge found, and we agree, that McCarthy's misconduct is aggravated by seven factors. First, McCarthy had a dishonest or selfish motive, given that he attempted to conceal his failure to make any effort to have the appeal reinstated by knowingly and intentionally misrepresenting to Radding that he was working on reinstating the appeal.

Second and third, McCarthy engaged in a pattern of misconduct and multiple violations of the MARPC, including misconduct while representing View Point and Radding and during Bar Counsel's investigation. Fourth, McCarthy engaged in bad faith obstruction of the attorney discipline proceeding, as shown by his knowing and intentional failure to comply with Bar Counsel's many requests for information during the investigation of Radding's complaint. Fifth, McCarthy refused to acknowledge the wrongful nature of his misconduct and instead attempted to blame Radding for his own failures. Sixth, Radding, who had incurred a brain injury affecting his memory and ability to communicate verbally, which was known to McCarthy, was a vulnerable victim. Seventh, McCarthy had substantial experience in the practice of law, given that he had been a member of the Bar of Maryland for approximately twenty-seven years at the time his misconduct began.

The hearing judge determined that McCarthy's misconduct is mitigated by only two factors: lack of prior attorney discipline and good character and reputation.[15] The hearing judge found that McCarthy failed to prove that his misconduct was mitigated by personal or emotional problems or that he was unlikely to repeat his misconduct, and McCarthy has not excepted to the hearing judge's determination.

We conclude that the appropriate sanction for McCarthy's misconduct is

---

[15]Despite having objected to McCarthy testifying to his own character and reputation at the disciplinary hearing, in this Court, Bar Counsel does not except to the hearing judge's finding of the mitigating factor of good character and reputation. In the absence of an exception from Bar Counsel, we will not disturb the hearing judge's finding. In considering the appropriate sanction, however, we give this mitigating factor little weight as it was established entirely by McCarthy's own testimony. We agree that the mitigating factor of lack of prior discipline is applicable.

disbarment. With the self-serving purpose of concealing his failure to make any effort to have View Point's appeal reinstated after it was dismissed because he failed to file an opening brief, an appendix, or a motion to extend time, McCarthy knowingly and intentionally misrepresented to Radding that he was working on reinstating the appeal. McCarthy engaged in intentional dishonesty absent compelling extenuating circumstances that are generally necessary to preclude disbarment, see Miller, 467 Md. at 228, 223 A.3d at 1006, and, indeed, absent any significant mitigating factors. Making matters even worse, in addition to engaging in intentional dishonesty, McCarthy failed to meet filing deadlines which resulted in his client's case being dismissed. McCarthy also failed to adequately communicate with Radding, engaged in the unauthorized practice of law, and knowingly and intentionally failed to provide timely and complete responses to Bar Counsel's numerous requests for information and documentation. McCarthy's misconduct is aggravated by a dishonest or selfish motive, bad faith obstruction of the attorney discipline proceeding, and other factors. Together, all of these circumstances make clear that disbarment is the appropriate sanction.

The disbarment of the attorney in Davenport, 472 Md. 20, 244 A.3d 1032, confirms our conclusion that disbarment is likewise warranted in this case. In Davenport, we disbarred an attorney who abandoned his representation of a client and failed to respond at all to Bar Counsel's demands for information, and we observed that we had previously disbarred attorneys for such misconduct. See id. at 35-36, 244 A.3d at 1040-41. Similarly, McCarthy engaged in disbarment-worthy ethical failures. Both McCarthy and the attorney in Davenport abandoned representation of clients and failed to communicate to anyone,

including the clients, any valid excuse for doing so. See id. at 35-36, 244 A.3d at 1040-41. Both McCarthy and the attorney in Davenport failed to do what they had been retained to do—in one instance, prosecute an appeal and, in the other, provide representation in a divorce and custody case, respectively. See id. at 27, 244 A.3d at 1036. And, the attorney in Davenport knowingly and intentionally failed to respond to Bar Counsel's request for information while McCarthy knowingly and intentionally failed to provide timely and complete responses to Bar Counsel. See id. at 25-26, 244 A.3d at 1035.

Indeed, the circumstances of this attorney discipline proceeding warrant disbarment even more than those of Davenport. The attorney in Davenport was not determined to have violated MARPC 8.4(c). See id. at 30 n.3, 244 A.3d at 1038 n.3. By contrast, McCarthy violated MARPC 8.4(c) by knowingly and intentionally misrepresenting to Radding that he was working on reinstating the appeal. In other words, McCarthy did more than fail to provide a valid explanation for mishandling the appeal, he engaged in intentional dishonesty to cover his tracks. Like Miller, this attorney discipline proceeding implicates the principle that "disbarment is generally the appropriate sanction for intentionally dishonest conduct[.]" Id. at 228, 223 A.3d at 1006 (citation omitted). McCarthy's violation of MARPC 8.4(c) along with all of the other MARPC violations and the presence of such numerous aggravating factors demonstrate that disbarment is warranted.

For all of the reasons herein, we disbar McCarthy.

**IT IS SO ORDERED; RESPONDENT SHALL PAY ALL COSTS AS TAXED BY THE CLERK OF THIS COURT, INCLUDING COSTS OF ALL TRANSCRIPTS, PURSUANT TO MARYLAND**

**RULE 19-709(d), FOR WHICH SUM JUDGMENT IS ENTERED IN FAVOR OF THE ATTORNEY GRIEVANCE COMMISSION AGAINST THOMAS MCCARTHY, JR.**